UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA )
                         )
v.                       )        NO. 13-191-02
                         )
AMBUR MAY HAM            )


SENTENCING MEMORANDUM
ON BEHALF OF AMBUR HAM

Through counsel, Ambur Ham files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

The Defendant was charged by Indictment to the following offenses: Count 1: Conspiracy to Produce Child Pornography 18 U.S.C. 2251(a); Counts 2 through 4: Production of Child Pornography 18 U.S.C. 2251(a).

On November 27, 2013, the defendant entered an open plea agreement to Counts One through Four of the Indictment. Statutory Provisions for counts 1 through 4 require a mandatory minimum sentence of imprisonment of 15 years with a maximum term of 30 years. 18 U.S.C. 2251(a). PSR p.14 para. 92. The presumptive guideline range is 360 to 1440 months. PSR p.14 para. 93.

On October 6, 2014 and November 25, 2014 the Defendant met with Frank M. Dattilio, Ph.D. to be interviewed for a Psychological Evaluation. The evaluation was requested by the undersigned to aid the court in sentencing. The report was finalized on June 9, 2015.

Because of the foregoing Booker analysis and its progeny, the Court is not bound to impose a sentence greater than 15 years.

Sentencing under Booker:

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the

sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.

Based on this conclusion, the Court further found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b) (1) or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, [1] requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a) (4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a) (2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the
most effective manner.

---

[1] It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S. Ct. 1254 (2005). Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that Almendarez-Torres was wrongly decided. 125 S. Ct. at 1264 (Thomas, J., concurring).

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a) (1);
2) the kinds of sentences available (§ 3553(a) (3);
3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a) (6); and
4) the need to provide restitution to any victims of the offense. (§ 3553(a) (7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, F. Supp. 2d, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the

guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005). Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**Application of the Statutory Sentencing Factors to the Facts of this Case:**

Pursuant to Section 3553(a), the sentencing court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes

set forth in paragraph 2.

An analysis of the purposes set forth in Section 3553(a) (2) to the within case are as follows:

(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

     The Defendant is cognizant of the fact that her involvement in the Conspiracy to produce child pornography is a serious offense. After the initial contact with police and other investigating agencies, she freely admitted to her involvement with the co-defendant and assisted with his prosecution. She met with the authorities and truthfully answered their questions. On information and belief, she did not get a 5K1 motion from the Government because she would not admit to inappropriately touching the minor children. From the date of her arrest to the present she contends that she did conspire with the co-defendant in producing and transmitting child pornography, however has consistently denied touching the children.

     Ms. Ham entered into an open plea with prior counsel. At that time she was made aware that with the plea came a sentence with a mandatory minimum of 15 years. Although the presumptive guideline range is significantly higher (360 to 1440 months PSR p.14 para. 93), the mandatory alone is more than sufficient to address the criteria espoused in 3553(a) (2).  However, because of a great disparity between the mandatory minimum sentence and the presumptive guideline range, there is wide discretion available to the court with the imposition of a sentence.  Case law cited above now require that in every case a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing

(B) to afford adequate deterrence to criminal conduct;

     The Defendant is currently incarcerated and has been incarcerated on this offense since March 26, 2013. Relying on the information contained in the Pre-sentence Report, Ms. Ham, in the best case scenario, will remain incarcerated for an additional 13 years. She will present at sentencing at the age of 22.  Because this is her first criminal conviction, the court cannot judge what affect, if any, prior periods of confinement served as a sufficient deterrent from further criminal conduct.  However based upon all of the information contained in the PSR together with the psychological evaluation completed by Frank M. Dattilio, Ph.D., a sentence of 15 years is more than sufficient to deter future criminal conduct.

(C) to protect the public from further crimes of the defendant; and

     The Defendant appears before the Court at the age of 22. Assuming the Court imposes the minimum sentence of 15 years, or assuming arguendo that a discretionary

sentence is imposed, the Defendant will most likely be well into her 30's or 40's at the time of her release. Empirical studies have shown that the rate of recidivism is drastically decreased as an individual gets older. Not only will a period of incarceration protect the public, those protections will continue from the long period of supervised release and the Defendant's progression into pre-middle age while in prison.

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Defendant graduated from high school on June 10, 2011. PSR p.13 para.85. The report further notes that Ms. Ham underwent the Wechsler Intelligence Scale for Children on March 13, 2006. She maintained an IQ of 78 and was diagnosed with Specific Learning Disability. PSR p.13 para.86. She was in special education classes between 3.5 and 6.5 hours per day.

Dr. Dattilio performed the Wechsler Abbreviated Scale of Intelligence and determined a full scale IQ score of 81. The doctor placed her in the very low end of the low average range. (Dattilio report 6/9/15 p.11) Any and all needed educational or vocational training can be accomplished while incarcerated. The scope of training, given the background of the Defendant, will not require a sentence of more than fifteen years.

**18 U.S.C.A. 3553(a):**

Pursuant to 18 U.S.C.A. 3553(a) the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender:

(a) Nature and Circumstances of Offense:

Ms. Ham adopts, in part, the Offense Conduct as contained in the Pre-Sentence Report pp. 4-7 para. 5-21. During the course of this conspiracy she freely admitted to producing child pornography with the co-defendant. However when pressed by the authorities into allegations of physically abusing the children in a sexual manner, she flatly denied any such behavior. This denial is not to be construed as a failure to accept responsibility for her criminal behavior. To the contrary she immediately confessed to the authorities and assisted in the prosecution of the co-defendant. Then she entered into an open plea with a mandatory minimum of sentence of 15 years.

(b) History and Characteristics of Ambur Ham:

According to the Pre-Sentence Report, the Defendant has a criminal history category of I with a total criminal history score of zero. PSR: p. 10 para. 66. She has no

history of substance abuse as noted in the PSR and confirmed by the Ms. Ham. PSR p.13 para.84. She graduated high school despite learning disabilities and maintained steady employment at the Goodwill Thrift Store for over four years before her arrest on the instant charges. PSR p.13 para.85, 87.

It was noted both in the PSR and the report from Dr. Dattilio that Ms. Ham suffered a birth accident that caused oxygen deprivation. PSR p.13 para.82. Both counsel and the probation officer were not able to secure medical records from Chester County Hospital to confirm this allegation. However, Dr. Dattilio spoke with the Defendant's mother who confirmed that Ambur aspirated some fluid during the delivery and as a result did lose substantial oxygen which contributed to some cognitive deficits. Dattilio report p.3.

The PSR notes that Ms. Ham underwent the Wechsler Intelligence Scale for Children on March 13, 2006. She maintained an IQ of 78 and was diagnosed with Specific Learning Disability. PSR p.13 para.86. She was in special education classes between 3.5 and 6.5 hours per day. In or around October 2014, Dr. Dattilio performed the Wechsler Abbreviated Scale of Intelligence and determined a full scale IQ score of 81, placing her in the very low end of the low average range. (Dattilio report p.11)

For intellectual functioning, Dr. Dattilio opined that Ms. Ham clearly has some disabilities and there is a cognitive deficit that suggests that she processes information slower and may be easily overwhelmed. Dattilio report p. 11.

Dr. Dattilio further opined "psychodiagnostic test results suggest that Ms. Ham qualifies for a dependent personality disorder with avoidant personality traits…there is clear indication of obsessive compulsive characteristics and some negativistic personality features." Dattilio report p. 12. The psychological evaluation portrays a personality profile that suggests that Ms. Ham is markedly dependent, docile, self-effacing and ineffectual in relationships. She typically appears both dejected and tense and struggles with feelings of helplessness. This contributes to her propensity to gravitate towards relationships, particularly with males who may tend to dominate and control her. She has a great deal of distrust for others and is very vigilant. As a result, when someone breaks thorough that barrier with her and wins her trust shy may acquiesce to their demands and become easily manipulated. Id.

The Doctor concludes Ham's Personality Dynamics by stating that she tends to be an individual who is easily mislead by others. "This is particularly so in the case of dominant males with whom she feels she has little control". Id.

The psychological report paints a picture of a young lady with learning disabilities that may have been caused at birth due to oxygen deprivation. With these disabilities came ridicule, torment and bullying at school. She gravitated towards other students with similar problems because she felt she fit in. At a young age (16) she reports that she was molested by a male neighbor who was 31. The assault consisted of inappropriate touching and digital penetration. Ms. Ham's mother did confirm the allegation of abuse made by

her daughter, but told Dr. Dattilio that both the police investigation and that of Children and Youth came back as unfounded. Dattilio report p.5.

Based upon the information contained in the PSR together with Dattilio's report, it would be reasonable to conclude that Ambur would not be in her current situation but for the actions of Cori Merklinger and the influence that he had over her.

2. The Kinds of Sentences Available:

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id. Therefore the Court has unfettered discretion to take into consideration the particular circumstances surrounding the Defendants case in order to impose an appropriate sentence not in excess of the mandatory minimum of 15 years.

(a) The Sentencing Range Established by the Sentencing Commission:

Based upon a total offense level of 42 and a criminal history category of I, the guideline imprisonment range is 360 to life. However, as the statutory maximum is 360 months, per count, pursuant to U.S.S.G. 5G1.1(a) the guideline range is 360 to 1440 months. PSR p.14 para.93.

3. The Need to Avoid Unwarranted Disparities:

Because of the Defendant's cooperation with authorities following her arrest, together with the information contained in the PSR and the psychological report authored by Dr. Dattilio, a sentence significantly less than that of a co-defendant will not be an unwarranted disparity.

Conclusion:

For the foregoing reasons, Ambur Ham respectfully submits that a sentence should be imposed that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/ Robert Patterson*                                              *Date: June 15, 2015*